ALSTHOM ATLANTIQUE and
Cogenel, Inc., Plaintiffs,

v.

UNITED STATES, Defendant,

and

Westinghouse Electric Corp.,
Intervenor.

Court No. 82–4–00474.

United States Court of
International Trade.

Jan. 24, 1985.

Donohue and Donohue, New York City (Joseph Donohue and John M. Peterson, New York City, on the brief), for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., Washington, D.C. (J. Kevin Horgan, New York City, on the brief and at the argument), for defendant.

Steptoe & Johnson, Washington, D.C. (Richard O. Cunningham, Valerie A. Slater and Kevin Brosch, Washington, D.C., on the brief), for intervenor.

## OPINION AND ORDER

RAO, Judge:

This civil action involves shunt reactors manufactured in France by plaintiff, Alsthom Atlantique. The facts underlying the issues involved date back to March 11, 1970 when intervenor, Westinghouse Electric Corp. (Westinghouse), an American manufacturer of electrical equipment, petitioned the Treasury Department (Treasury) (which then had jurisdiction over antidumping determinations) to investigate whether large power transformers from France were being sold in this country at less than fair value (LTFV).

Treasury sent out questionnaires to the manufacturers of large power transformers in France, including Alsthom Atlantique. On June 9, 1971 the Notice of Antidumping Proceeding was amended "to make it clear that the notice applies to all types of transformers rated 10,000 KVA or above ... including but not limited to shunt reactors ..." (A.R. 375).

Treasury had already received some responses to its questionnaires on large power transformers and it is not clear whether it resubmitted questionnaires with specific reference to shunt reactors. As a matter of fact, no shunt reactors were imported into the United States from France during the period of investigation and no specific finding was made as to whether shunt reactors, other than as included within the class or kind of large power transformers, were being sold at LTFV. The matter was referred to the United States Tariff Commission (now the International Trade Commission) (Commission) for a determination of whether an American industry was being injured or was likely to be injured by the articles of merchandise enumerated in the petition and a positive response was given by the Commission. The final antidumping duty order issued by Treasury as to "the class or kind of large power transformers" did not refer to shunt reactors specifically and established a dumping margin of 24 per cent. T.D. 72–160.

On January 2, 1980 responsibility for the administration of the antidumping provisions of the Tariff Act of 1930, as amended, was transferred from Treasury to the Department of Commerce (Commerce). The International Trade Administration (ITA) of Commerce undertook an annual administrative review of T.D. 72–160, pursuant to 19 U.S.C. § 1675 (hereinafter "section 751"). This review covered the period of October 1, 1972 to June 30, 1980 and the administrative record reflects that a hearing was held at which all the parties presented their views.

As a result of its review the ITA concluded that shunt reactors were within the "class or kind" of merchandise covered by

Treasury's dumping determination and that the scope of Treasury's dumping finding could not be changed during a section 751 administrative review. Because the ITA lacked specific information regarding Alsthom Atlantique's home market prices, it decided to postpone appraisement of shipments imported during the review period and directed that the 24 per cent cash deposit be continued on all shipments of large power transformers and shunt reactors until the publication of the final results of the *next* annual review.

It is plaintiff's position that the ITA erred in both its determinations as a matter of law, and that its conclusions are not supported by substantial evidence in the administrative record.

There is no question as to the timeliness of this civil action. However, defendant does challenge the method employed by plaintiffs in bringing the 24 per cent dumping margin into issue. It is defendant's position that this margin, imposed by Treasury on large power transformers, including shunt reactors, can only be raised after a protest filed against the assessment of dumping duties when merchandise subject to the order is imported, under the statutory provisions in effect before the Trade Agreements Act of 1979 changed the procedure to obtain review of dumping determinations. Since no shunt reactors have been entered, no protests filed and denied as to this margin, defendant posits that the Court is without jurisdiction in this case.

■ It is plaintiff's position that it is contesting Commerce's section 751 review of T.D. 72–160, particularly as it purports to apply to shunt reactors, and not the underlying Treasury determinations, and this Court agrees with this position. See *Diversified Products Corp. v. United States (Stewart-Warner Corp., Intervenor)*, —— CIT ——, 572 F.Supp. 883 (1983).

The question for this Court, then, is whether the ITA did in fact reach a conclusion that shunt reactors are to continue to be covered under T.D. 72–106, whether this decision was within the scope of its authori-

ty under the statute and whether this decision was supported by substantial evidence.

The administrative record of the hearing conducted by the ITA reflects that the ITA considered whether it could amend the scope of the underlying Treasury decision. The transcript of the administrative hearing shows that Mr. Leonard M. Shambon, who conducted the hearing for the ITA, considered the scope of the Treasury decision:

Well, I don't think we were focusing necessarily on what the ITC decided, but instead on what Treasury decided in placing the order on the books. And Treasury clearly said large power transformers; they, in the not too distant past before that order, had amended the investigation and explicitly listed what it perceived to be a large power transformer.

And we have no hint that Treasury, in placing the order, after investigating and finding no shipments of French shunt reactors, decided to carve out that merchandise. So, we are left with the supposition that Treasury, despite the fact that there were no shipments of French shunt reactors, fully intended to include French shunt reactors when it placed the thing on the books.

And so they may have made a wrong decision, but they made a decision. Now, my power under 751 is to investigate shipments of merchandise subject to an order, and the only authority I have is under 751(b), I think, to measure situations of changed circumstances dealing with the merchandise subject to the order.

\* \* \* \* \* \*

So, it is, first, a question of jurisdiction. If, in fact, I do have the jurisdiction to re-examine the wisdom of the Treasury decision, then I have to face the issue of whether or not I see anything wrong in what Treasury did. (A.R. 305–307).

Mr. Shambon even inquired as to whether the issue of no shipments of French shunt reactors was discussed in the briefs

or at the hearing prior to the issuance of Treasury's order (A.R. 310).

Thus, it is clear from the transcript of the hearing held with reference to the § 751 review that the question was raised as to the authority of the Commerce Department to modify an order of the Treasury Department, and that this question was answered in the negative by the ITA. The ITA did not reach the issue of whether the original Treasury decision was erroneous in that it included shunt reactors in the same dumping duty order with large power transformers.

■ The Court finds that the ITA's conclusion in this matter was in error. Although the scope of the annual review permissable under § 751 was not defined by Congress, the legislative history of the Act indicates that the Commerce Department can review whether sales at less than fair value exist:

> In addition the authority could review, upon request, a determination that ... less-than-fair value sales exists (sic). U.S. Senate Report No. 96–249, p. 80, U.S.Code Cong. & Admin.News 1979, pp. 381, 466.

Additionally, it is noted that the responsibility for administering the antidumping laws was transferred from Treasury to Commerce on January 2, 1980, more than five years ago. To require plaintiff to seek review of an antidumping duty order from an agency which has not been involved in this activity for more than five years, which no longer employs the personnel with expertise in this area and no longer has the facilities to conduct reviews or investigations, would not be in the interest of justice. The ITA, on the other hand, does employ such experts in this field and has a Congressional mandate to make annual reviews of antidumping duty orders. To hold that the ITA would be forced to follow an erroneous Treasury order until it was changed by Treasury would frustrate rather than further Congressional intent in transferring authority in antidumping matters to Commerce.

It is also to be noted that it is the underlying less-than fair value determination which creates the difficulty in this case. The ITC, in the original dumping investigation, found less than fair value sales of shunt reactors from France even though there had been no exports from France to the United States of shunt reactors during the period of investigation. Even if defendant and intervenor were correct in their position that the Treasury decision could not be reviewed by Commerce, the legislative history relied upon, supra, indicates that Congress intended that the less than fair value determination underlying the Treasury order could be reviewed by Commerce.

In *Diversified Products Corp. v. United States (Stewart-Warner Corp., Intervenor),* —— CIT ——, 572 F.Supp. 883 (1983), Judge Maletz concluded that the ITA has the authority to review a pre-Trade Agreements Act dumping finding for the purpose of ascertaining its scope:

> [T]he ITA, not the Customs Service, is responsible for clarifying, where necessary, the scope of dumping findings and antidumping duty orders.

The Court further stated:

> [I]t is equally clear that the ITA is in no way obligated to follow nor is it bound by the classification determination of Customs when it does clarify the scope of a dumping finding.

It is thus clear that this case must be remanded to the ITA for a determination by it as to whether shunt reactors are within the class or kind of merchandise encompassed by large power transformers.

Plaintiff has adduced much evidence, both before the ITA in its presentation in conjunction with the section 751 review and in its briefs in this action, that shunt reactors are not, commercially, of the same class or kind of merchandise as large power transformers and Westinghouse has adduced a similarly impressive argument that they are of the same class or kind.

While the classification of merchandise under the Tariff Schedules of the United States (TSUS) is not binding on the ITA in

its class or kind determination (see *Royal Business Machines v. United States,* 1 CIT 80, 507 F.Supp. 1007 (1980), the Court directs the attention of the ITA to the holding of our appeals court, the United States Court of Appeals for the Federal Circuit, in *Asea, Inc. v. United States,* 748 F.2d 676, (Fed.Cir.1984) in which classification of shunt reactors under item 682.60, TSUS, as "inductors" was upheld.

This case is remanded to the ITA for a redetermination of its annual review of T.D. 72–160 in a manner consistent with the decision herein.