**ALSTHOM ATLANTIQUE and Cogenel, Inc., Appellees,**

v.

**The UNITED STATES, Appellant/Cross-Appellee,**

**and**

**Westinghouse Electric Corporation, Appellant.**

**Appeal Nos. 85–2082, 85–2158.**

United States Court of Appeals, Federal Circuit.

March 24, 1986.

A. David Lafer, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellant/cross-appellee U.S. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Velta A. Melnbrences, Asst. Director.

Richard O. Cunningham, Steptoe & Johnson, Washington, D.C., argued for appellant Westinghouse. With him on brief were W. George Grandison, Kevin J. Brosch and Barbara A. Pollack.

Joseph F. Donohue, Sr., Donohue & Donohue, New York City, argued, for appellees.

Before MARKEY, Chief Judge, RICH and SMITH, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this antidumping case, appellants, the United States and Westinghouse Electric Corporation, appeal from a Court of International Trade decision remanding an administrative determination by the International Trade Administration, Department of Commerce (ITA), and holding that the ITA, during its review pursuant to section 751 of the Trade Agreements Act of 1979, could change the scope of an antidumping finding made by the Department of the Treasury (Treasury). We reverse.

## I. *Issues*

The principal question before this court is whether the lower court erred, as a matter of law, in not dismissing as untimely, the challenge of appellees Alsthom Atlantique and Cogenel, Inc. (Alsthom) to Treasury's antidumping determination with respect to large power transformers from France. We also address whether the lower court erred in holding that the ITA has the authority, during the course of a section 751 review, to change the scope of an underlying antidumping determination made by Treasury.

## II. *Background*

The lengthy chronology of events leading up to the current dispute began on March 11, 1970, when a petition was filed with the Treasury by Westinghouse Electric Corporation, requesting Treasury to initiate an antidumping investigation of large power transformers from France. The Westinghouse petition indicated a possibility that large power transformers from France were being, or were likely to be, sold at less than fair value within the meaning of the Antidumping Act of 1921, as amended.[1] On June 17, 1970, an Antidumping Proceeding Notice issued by Treasury was published in the *Federal Register* announcing its plans to institute an inquiry to verify the information submitted by Westinghouse and to obtain the facts necessary to reach a determination as to the fact or likelihood of sales at less than fair value.[2] Treasury proceeded to conduct its inquiry, which included an investigation of Alsthom Savoisi-

---

1. 19 U.S.C. § 160 *et seq., repealed by* Pub.L. No. 96–39, tit. I, § 106(a), 93 Stat. 193 (1979).

2. 35 Fed.Reg. 9934 (1970).

enne, the corporate predecessor of Alsthom Atlantique.

On June 11, 1971, Treasury, in response to questions concerning the scope of its antidumping investigation, issued instructions indicating that the Antidumping Proceeding Notice with respect to large power transformers from France was being amended to clarify Treasury's intent in the original notice.[3] These instructions stated that the Antidumping Proceeding Notice applied to "all types of transformers rated 10,000 KVA or above, * * * including but not limited to shunt reactors." Treasury's notice explicitly indicated that Treasury was investigating, and that its findings would apply to, all types of large power transformers including shunt reactors.

On October 21, 1971, Treasury published a "Withholding of Appraisement Notice" with regard to large power transformers from France.[4] This notice announced Treasury's determination that there were "reasonable grounds to believe or suspect that the purchase price * * * of large power transformers from France is less, or likely to be less, than the foreign market value." The notice further indicated that Treasury was directing Customs officers to withhold appraisement of large power transformers from France. On April 25, 1972, the United States Tariff Commission published its determination that an industry in the United States was being injured by less than fair value imports of large power transformers from France.[5] On June 14, 1972, Treasury published its finding of dumping with regard to large power transformers from France.[6] No further administrative action was taken with respect to large pow-

er transformers from France until after January 1, 1980.

The Trade Agreements Act of 1979 transferred the responsibility from the Customs Service to the ITA for determining the applicable antidumping duties.[7] The act also amended the Tariff Act of 1930 to provide for the annual review of "the amount of any antidumping duty." Pursuant to this authority, the ITA on March 28, 1980, published in the *Federal Register* a notice that it was conducting administrative review of 83 outstanding determinations of dumping.[8] On April 9, 1980, after the ITA announced its intent to conduct an administrative review and prior to its preliminary results of the review, Cogenel, Inc., Alsthom's subsidiary and United States importer of large power transformers from France produced by Alsthom, requested that the ITA "modify" the Treasury's antidumping finding by removing Alsthom Unelic (corporate successor to Alsthom Savoisienne, corporate predecessor to Alsthom Atlantique) from the finding on the basis of "changed circumstances" pursuant to 19 C.F.R. §§ 353.53–.54.[9]

On June 25, 1981, the ITA published a notice of "Preliminary Results of Administrative Review of Antidumping Finding" with regard to large power transformers from France.[10] Due to Alsthom's failure to provide specific information regarding the merchandise sold in its home market, the ITA preliminarily determined to postpone appraisement of entries and to establish a cash deposit rate based upon the best information available.

---

3. 36 Fed.Reg. 11,308 (1971).

4. 36 Fed.Reg. 20,374 (1971).

5. 37 Fed.Reg. 8136 (1972).

6. 37 Fed.Reg. 11,772 (1972).

7. Trade Agreements Act of 1979, 19 U.S.C. § 1675 (1982).

8. 45 Fed.Reg. 20,511–12 (1980).

9. Under § 353.53, whenever the Secretary of Commerce determines that sales of merchandise subject to an antidumping order are no

longer being made at less than fair value, and that there is no likelihood of resumption of sale at less than fair value, he may act to revoke or terminate, in all or in part, such order. However, § 353.54 requires a firm applying for a revocation of a dumping finding to demonstrate to the ITA that sales of the merchandise are no longer made at less than fair value, and to satisfy the ITA that there is no likelihood of resumption of sales at less than fair value.

10. 46 Fed.Reg. 32,928 (1981).

Following publication of the notice of the preliminary results of ITA's section 751 review, Alsthom requested a hearing to discuss whether shunt reactors were within the "class or kind of foreign merchandise" covered by Treasury's original antidumping order on large power transformers from France. The hearing was held on July 30, 1981. At the hearing, Alsthom asserted that shunt reactors were not subject to Treasury's antidumping order since there was never a valid finding that shunt reactors had been imported, had been sold at less than fair value, or had injured or threatened to injure an industry in the United States.

On March 10, 1982, the ITA published its notice of "Final Results of Administrative Review of Antidumping Finding" with regard to large power transformers from France.[11] The ITA determined that shunt reactors were clearly included in Treasury's antidumping finding, using the same language set forth by Treasury in the original Antidumping Proceeding Notice of June 11, 1971. The ITA held that the scope of the antidumping finding could not be changed during a section 751 administrative review since it was clear that shunt reactors were included in the subject class or kind of merchandise, large power transformers, throughout the administrative proceeding. The ITA further ruled that not all elements of a class or kind of merchandise must be exported to the United States during the period of investigation in order for such elements to be within the scope of an antidumping finding order and that not all elements must be sold at less than fair value.

Alsthom brought action in the Court of International Trade pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c) challenging ITA's section 751 final results of administrative review with respect to large power transformers from France. The lower court, relying on its decision in *Diversified Products Corp. v. United States*,[12] declared the action timely, accepting Alsthom's assertion that it was contesting ITA's section 751 review of Treasury's antidumping determination of large power transformers from France, and not the underlying Treasury determination itself. The lower court issued a memorandum opinion and order remanding the case to the ITA because, in the view of the lower court, the ITA had erred in its conclusion that it had no authority, in the context of a section 751 review, to alter the scope of the antidumping finding established by Treasury.[13] For the reasons set out below, we hold that the lower court erred both (1) in not dismissing Alsthom's appeal as untimely and (2) in determining that the ITA has authority, during a section 751 review, to alter the scope of an antidumping determination established by Treasury.

### III. *Analysis*

#### A. *Timeliness of Appeal.*

Judicial review of countervailing and antidumping duty determinations is governed by the Transitional Rules, section 1002(b)(3) of title X of the Trade Agreements Act of 1979.

(3) CERTAIN COUNTERVAILING AND ANTIDUMPING DUTY ASSESSMENTS.—The amendments made by this title shall apply with respect to the review of the assessment of, or failure to assess, any countervailing duty or antidumping duty on entries subject to a countervailing duty order or antidumping finding if the assessment is made after the effective date. If no assessment of such duty had been made before the effective date that could serve the party seeking review as the basis of a review of the underlying determination, made by the Secretary of the Treasury or the International Trade Commission before the effective date, on which such order, finding, or lack thereof is based, then the underlying determination shall be subject

---

**11.** 47 Fed.Reg. 10,268 (1982).

**12.** *Diversified Products Corp. v. United States,* 572 F.Supp. 883 (Ct.Int'l Trade 1983).

**13.** *Alsthom Atlantique v. United States,* 604 F.Supp. 1234 (Ct.Int'l Trade 1985).

to review in accordance with the law in effect on the day before the effective date.

The Transitional Rules, in effect, set out guidelines indicating to the complainant the proper procedure he should follow in obtaining judicial review of an antidumping or countervailing duty determination.

Under the Transitional Rules, the complainant's initial inquiry is directed to whether the antidumping finding concerning the article in question was "made by the Secretary of the Treasury or the International Trade Commission before the effective date." If the antidumping finding was made after January 1, 1980, then irrespective of whether an assessment of antidumping duty was performed, the complainant may seek judicial review, pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c), of all section 751 administrative reviews within 30 days of the date they are published in the *Federal Register.* If, however, the antidumping finding was made prior to the effective date, then a further question must be addressed, namely, whether there has been an assessment of antidumping duty subject to the antidumping finding. If no assessment of such duty had been made before the effective date, then the Transitional Rules direct that review of the antidumping finding "shall be subject to review in accordance with the law in effect on the day before the effective date." Under such prior law, importers of the merchandise covered by Treasury's antidumping determination must wait until an entry of the merchandise is liquidated, and then must protest that liquidation pursuant to 19 U.S.C. § 1514 (1976). Then, if that protest is denied as provided in 19 U.S.C. § 1515 (1976), the importer may challenge that denial in the Court of International Trade pursuant to 28 U.S.C. § 1581(a).

█ Application of the guidelines set forth by the Transitional Rules to the present case directs our first inquiry to when the articles in question, shunt reactors, were subject to an antidumping find-

ing. Treasury, from the outset, specifically included shunt reactors in the scope of its 1971 antidumping investigation of large power transformers from France. The Transitional Rules, therefore, direct our second inquiry to whether there has been an assessment of antidumping duty on shunt reactors prior to the effective date. Since no such assessment had been made, the Transitional Rules dictate that judicial review of the antidumping determination may only be obtained in accordance with the law in effect on the day before the effective date. Therefore, we arrive at our conclusion that Alsthom's challenge was untimely and should have been made pursuant to 28 U.S.C. § 1581(a) only after exhausting the administrative procedures set forth by 19 U.S.C. §§ 1514–1515 (1976).

Alsthom attempted to challenge Treasury's inclusion of shunt reactors within the scope of its antidumping determination concerning large power transformers from France by bringing action in the Court of International Trade pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c). The lower court accepted Alsthom's appeal from the ITA relying on the previous Court of International Trade decision of *Diversified Products Corp.* [14] as authority. The lower court accepted Alsthom's position that Alsthom was contesting ITA's section 751 review of Treasury's antidumping determination, and not the underlying Treasury determination itself. However, as will be shown below, *Diversified Products* is distinguishable from the present case and it was error for the lower court to rely on it in accepting Alsthom's appeal of the ITA decision.

The history of the antidumping determination in *Diversified Products* began in 1971 when a complaint was filed with the Treasury by an intervenor requesting initiation of a dumping investigation of bicycle speedometers from Japan. In 1972, Treasury determined that bicycle speedometers from Japan were being sold at less than fair value. Shortly after enactment of the

---

**14.** *Diversified Products,* 572 F.Supp. 883.

Trade Agreements Act of 1979, the ITA began its review of all prior dumping findings of the Treasury Department. This review included a determination whether double-gear hub drive speedometers, which had not yet been developed at the time of the 1972 dumping investigation, belonged to the class or kind of merchandise encompassed in the 1972 finding. During its section 751 review of the bicycle speedometer dumping determination, the ITA determined that double-gear hub speedometers were within the scope of the 1972 dumping finding. Diversified, pursuant to 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 1581(c), appealed the ITA's determination to the Court of International Trade, contending that double-gear hub drive speedometers were beyond the scope of the 1972 antidumping determination. Although the underlying antidumping determination regarding bicycle speedometers from Japan was made by Treasury in 1972, the specific recognition of double-gear hub drive speedometers within the scope of Treasury's 1972 determination was not done until after the effective date.

The lower court mistakenly relied on *Diversified Products* as controlling in this case because of the following factual distinctions which, under the Transitional Rules, result in different procedural requirements for obtaining judicial review of antidumping or countervailing duty determinations. First, in *Diversified Products*, the articles in question, double-gear hub drive speedometers, had not yet been developed at the time of Treasury's underlying antidumping determination of bicycle speedometers from Japan; while in the present case, shunt reactors had been developed prior to Treasury's antidumping determination of large power transformers from France. Second, in *Diversified Products*, it was the ITA which determined double-gear hub drive speedometers were within the scope of Treasury's antidumping finding; not Treasury, which in the present case had specifically included shunt reactors in the scope of its antidumping determination. Finally, in *Diversified Products*, double-gear hub drive speedometers were not determined to be within the scope of the underlying antidumping determination until after the effective date of the Trade Agreements Act of 1979; while in the present case, shunt reactors were included within the scope of the underlying antidumping determination prior to the effective date.

On appeal to this court, Alsthom asserts that its argument was not with the Treasury but with the ITA. Alsthom points out it was seeking a judgment in the lower court that the ITA determination "that shunt reactors were within the class of imported merchandise subject to the outstanding dumping order" was contrary to law. Alsthom specifically argues that: (1) transformers and shunt reactors are two separate classes or kinds of electrical equipment; (2) the Treasury, by including shunt reactors in its antidumping investigation of large power transformers from France, extended the scope of the investigation to include two classes or types of electrical equipment; (3) only merchandise found to have been sold at less than fair value can be included in an antidumping order; (4) the Treasury notice of sales at less than fair value did not mention shunt reactors; and (5) even assuming that shunt reactors were a specific type of large power transformer, none of them were imported.

■ Alsthom's assertion that its argument was not with the Treasury but with the ITA is untenable. In view of Alsthom's contentions as a whole, it is clear that Alsthom was seeking judicial review of Treasury's antidumping determination and not ITA's section 751 review. Alsthom's dissatisfaction with the Treasury's antidumping determination of shunt reactors cannot be cloaked in the guise of error on the part of the ITA in order to circumvent the Transitional Rules' procedural requirements for judicial review of antidumping determinations made prior to the effective date. We need not reach the merits of Alsthom's arguments concerning the inclusion of shunt reactors within the scope of

Treasury's antidumping determination at this time.

## B. *ITA Powers To Clarify Scope.*

The lower court, relying on *Diversified Products*, remanded this case to the ITA for a determination as to whether shunt reactors were within the class or kind of merchandise encompassed by large power transformers. The lower court specifically found the ITA to be in error as to its initial determination that it had no authority to modify the scope of an underlying antidumping determination by Treasury. For the reasons set out below, we reverse the lower court on this issue.

Court of International Trade case law correctly recognizes that the ITA section 751 review of an antidumping determination of Treasury is limited by the scope of the underlying finding.[15] Although the ITA has the power, during a section 751 review, to determine whether an unclassified article is within the scope of an original Treasury antidumping finding,[16] the ITA cannot change the scope of an underlying antidumping determination when Treasury has *specifically* included the article within the scope of its underlying determination.[17]

Here, the Treasury made its antidumping determination in 1972. The Treasury's actions during its investigation indicate that its original less than fair value investigation involved a single class or kind of merchandise—large power transformers from France. The Treasury *specifically* determined that the class or kind of merchandise—large power transformers—included several forms of transformers including shunt reactors. There is no question that the class or kind of merchandise initially investigated by the Government included shunt reactors.

Alsthom contends that 19 U.S.C. § 1673 invested the ITA with the obligation to take up antidumping investigations where it found them in 1980 and to review every fact that was needed to fix the amount of dumping duty or deposit. Alsthom asserts that, in order for the ITA to perform this statutory task, the ITA first must have determined that there was an existing dumping finding that included shunt reactors, namely, whether shunt reactors are of the same type or class of merchandise as large power transformers. While it is true that the ITA must determine whether there was an existing dumping finding that included the item, once the ITA determines that the Treasury included the item under its original antidumping determination, the ITA's inquiry into that issue ceases. Alsthom's assertion, if accepted, would lead the ITA into an impossible task of reviewing de novo each and every Treasury antidumping determination to determine whether Treasury correctly included the article in question within the scope of its underlying antidumping determination. In a section 751 review, the ITA does not have the power to substitute its judgment for Treasury's when Treasury has specifically included an item within its antidumping determination.

## IV. *Conclusion*

In view of the foregoing, we hold that Alsthom's challenge to the underlying antidumping determination made by the Treasury should have been dismissed by the lower court on the grounds of prematurity. The lower court further erred in determining that the ITA has the authority, during a section 751 review, to change the scope of Treasury's underlying dumping finding and in remanding the case back to the ITA.

REVERSED.

---

**15.** *See Royal Business Machs., Inc. v. United States,* 507 F.Supp. 1007 (Ct.Int'l Trade 1980), *aff'd,* 669 F.2d 692 (CCPA 1982); *Diversified Products,* 572 F.Supp. 883.

**16.** *Id.* at 889.

**17.** *Royal Business,* 507 F.Supp. at 1014.