972 F.2d 1355
 14 ITRD 1224
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
INTREPID, Plaintiff-Appellant,
v.
Mamie E. POLLOCK, District Director of, Customs and United
States of America, Defendants-Appellees.
 No. 92-1057.
 United States Court of Appeals, Federal Circuit.
 June 22, 1992.
 
 Before NIES, Chief Judge, EDWARD S. SMITH, Senior Circuit Judge, and PAULINE NEWMAN, Circuit Judge.
 DECISION
 NIES, Chief Judge.
 
 
 1
 Intrepid appeals from a judgment of the Court of International Trade upholding a determination made by the International Trade Administration of the Department of Commerce (Commerce) regarding the scope of an antidumping order. Intrepid v. Pollack, 768 F.Supp. 839 (1991). Commerce determined that the pipes imported by Intrepid, which were manufactured to British Standard (BS) specifications, were within the scope of an antidumping duty order concerning certain welded steel pipes from Thailand. See Circular Welded Carbon Steel Pipes and Tubes From Thailand (Antidumping Order), 51 Fed.Reg. 8341 (Dep't Comm.1986). We reverse and remand.
 
 OPINION
 
 2
 There is no challenge here to the validity of the Antidumping Order as applied generally to "standard pipe" and "structural tubing" from Thailand. At issue here is whether certain imports are covered by the Antidumping Order or, more precisely, whether the Court of International Trade properly concluded that Commerce's determination that the imports are within the scope of the Order was supported by substantial evidence and not otherwise contrary to law. See 19 U.S.C. § 1516(b)(1)(B) (1988). For purposes of review, we must, in effect review the underlying decision of Commerce itself. See Matsushita Elec. Indus. v. United States, 929 F.2d 1577, 1578 (Fed.Cir.1991).
 
 
 3
 Commerce cannot change the scope of an existing antidumping duty order after it is issued. Alsthom Atlantique v. United States, 787 F.2d 565, 571 (Fed.Cir.1986) (scope determinations can clarify but cannot change or modify the existing antidumping order). In this case, Commerce found that the scope of the Antidumping Order clearly included BS pipe on the basis of the product descriptions contained in the petition and the public documents relating to the investigation issued by the ITC and Commerce. Consequently, Commerce did not look beyond the product descriptions to evidence on the four factors listed in Diversified Prods. Corp. v. United States, 572 F.Supp. 883, 889 (Ct. Int'l Trade 1983).
 
 
 4
 Intrepid asserts that Commerce's investigation at its inception was directed to steel pipe manufactured according to standards published by the American Society for Testing and Materials (ASTM) and that such pipe is distinct from the BS pipe imported by Intrepid. The original notice defined the scope of investigation, as follows:
 
 
 5
 The products under investigation are: Circular welded carbon steel pipes and tubes, with an outside diameter of .375 inch or more but not over 16 inches, of any wall thickness, currently classifiable in the Tariff Schedules of the United States, Annotated (TSUSA) under Items.... These products commonly referred to in the industry as standard pipe or structural tubing are produced to various ASTM Specifications, most notably A-52, A-53, or A-135.
 
 
 6
 Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand, 50 Fed.Reg. 12068-69 (Dep't Comm.1985) (initiation) (emphasis added). In view of this restrictive language, Intrepid argues that Commerce's other public notices, i.e., of its determinations respecting this antidumping investigation, are ambiguous and do not amount to substantial evidence for the scope determination. We agree.
 
 
 7
 Commerce, as well as the Court of International Trade, failed to take into account the description of products in Commerce's original notice of investigation. As shown above, that notice states that the products under investigation are known as "standard pipe" or "structural tubing" (terms used in the petition) and then defines those terms as restricted to pipes or tubing which "are produced to various ASTM specifications." While subsequent notices, including the Antidumping Order, make no mention of ASTM specifications, the notices do utilize the previously defined words as terms of art, stating that the products under investigation are "known as 'standard pipe' or 'structural tubing'."[1]
 
 
 8
 In its brief the government interjects that the investigation was not limited to pipe produced according to ASTM specifications but included pipe produced in accordance with equivalent standards set by foreign organizations comparable to ASTM. The government also points to Commerce's use of information concerning BS pipe for determining the foreign market value of ASTM pipe as evidence that Commerce considered BS and ASTM pipe to be equivalent merchandise. However that may be, Commerce relied solely upon the product descriptions contained in the petition as well as the agencies' published notices and documents and, for purposes of review, we cannot look beyond that basis to find alternative support for Commerce's decision. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 51 (1982) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."); SEC v. Chenery Corp., 332 U.S. 194, 196 (1946).
 
 
 9
 Upon careful scrutiny of the petition and the determinations issued by the ITC[2] and Commerce, no reasonable mind could conclude that the Antidumping Order clearly encompasses items produced in Thailand to BS specifications. The series of public notices of the investigation and the preliminary and final results are at least ambiguous. Accordingly, we hold that the Court of International Trade erred in upholding Commerce's scope determination as being supported by substantial evidence and in accordance with law. We remand to the trial court with directions to remand the case to Commerce for an evidentiary hearing on the question of whether the BS pipe in issue is "standard pipe" or "structural tubing" within the legitimate scope of the Antidumping Order.
 
 COSTS
 
 10
 Costs are awarded to Intrepid.
 
 
 
 [1]
 Commerce's notice of its preliminary determination that sales of pipes and tubing from Thailand were made at less than fair value stated:
 The products under investigation are: certain circular welded carbon steel pipes and tubes, also known as "standard pipe" or "structural tubing," as currently provided in items ... of the [TSUSA].
 Certain Circular Welded Carbon Steel Pipes and Tubes From Thailand, 50 Fed.Reg. 40427, 40428 (Dep't Comm.1985) (prelim. determination of sales at less than fair value).
 The notice of final determination stated:
 The products under investigation are: certain circular welded carbon steel pipes and tubes, also known as "standard pipe" or "structural tubing," which includes pipe and tube with an outside diameter of 0.375 inch or more but not over 16 inches, or any wall thickness, as currently provided in items ... of the [TSUSA].
 Circular Welded Carbon Steel Pipes and Tubes From Thailand, 51 Fed.Reg. 3384 (Dep't Comm.1986) (final determination of sales at less than fair value).
 The antidumping Order stated:
 The products under investigation are certain circular welded carbon steel pipes and tubes (referred to in this notice as "pipes and tubes"), also known as "standard pipe" or "structural tubing," which includes pipe and tube with an outside diameter of 0.375 inch or more but not over 16 inches, of any wall thickness currently provided in items ... of the [TSUSA].
 Circular Welded Carbon Steel Pipes and Tubes From Thailand, 51 Fed.Reg. 8341.
 
 
 [2]
 Commerce looked to the description in the International Trade Commission's (ITC's) final determination which could be construed to include non-ASTM pipe. However, any perceived difference in the scope of the inquiries made by the two respective agencies does not detract from our holding here because the ITC's injury determination cannot broaden the scope of Commerce's investigation and corresponding Order. See 19 U.S.C. § 1673b(a) (1988)