# United States Court of Appeals
# for the Federal Circuit

—————————————

**M S INTERNATIONAL, INC., FOSHAN YIXIN STONE COMPANY, LTD., ARIZONA TILE LLC,**
*Plaintiffs*

**BRUSKIN INTERNATIONAL, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CAMBRIA COMPANY LLC,**
*Defendants-Appellees*

—————————————

2021-1679

—————————————

Appeal from the United States Court of International Trade in No. 1:19-cv-00140-LMG, Senior Judge Leo M. Gordon.

-----------------------------------------------------

**M S INTERNATIONAL, INC., ARIZONA TILE LLC,**
*Plaintiffs*

**BRUSKIN INTERNATIONAL, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, CAMBRIA COMPANY LLC,**
*Defendants-Appellees*

———————————————

2021-1680

———————————————

Appeal from the United States Court of International Trade in No. 1:19-cv-00141-LMG, Senior Judge Leo M. Gordon.

———————————————

Decided: April 25, 2022

———————————————

DAVID J. CRAVEN, Craven Trade Law LLC, Chicago, IL, argued for plaintiff-appellant.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; VANIA WANG, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

LUKE A. MEISNER, Schagrin Associates, Washington, DC, argued for defendant-appellee Cambria Company LLC. Also represented by BENJAMIN JACOB BAY, NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, KELSEY RULE, ROGER BRIAN SCHAGRIN.

———————————————

Before HUGHES, MAYER, and STOLL, *Circuit Judges*.

HUGHES, *Circuit Judge*.

In parallel antidumping and countervailing duty investigations of quartz surface products from China, the Department of Commerce amended the scope of its

investigations to prevent producers and exporters in China from evading its orders by using glass in place of quartz. Bruskin International LLC challenges Commerce's authority to modify the scope of the investigation and to do so without a hearing. Bruskin also challenges the factual findings that led Commerce to modify the scope of its investigations. Because Commerce has discretion to set the scope of its investigations, Bruskin's hearing request was untimely, and substantial evidence supports Commerce's factual findings, we affirm the Court of International Trade's decision upholding Commerce's scope modification.

## BACKGROUND

In 2018, Cambria Corporation filed a petition seeking antidumping and countervailing duties on certain quartz surface products from China. The petition requested the following scope:

> The merchandise covered by the investigation is certain quartz surface products. Quartz surface products consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (e.g., quartz, quartz powder, cristobalite) as well as a resin binder . . . .

Appx103 (Petition Scope).

Commerce asked Cambria how to determine whether a product is "predominately silica." In response, Cambria clarified that "the scope of the investigation only includes products where the silica content is greater than any other single material, by actual weight." Appx118. Commerce needed further clarification. The scope expressly covered products made from quartz, a crystalline form of silica. But silica is also the primary ingredient in most glass, although glass differs from quartz in that it is amorphous rather than crystalline. Appx1186–88. Commerce asked Cambria to clarify whether "products where the silica content is greater than any other single material" includes "glass

products" and to "revise the proposed scope if necessary." Appx118. Cambria responded:

> The quartz surface products covered by the scope of the investigation may contain a certain quantity of crushed glass. However, the scope is not intended to cover products in which the crushed glass content of the product is greater than any other single material, by actual weight. [Cambria] has revised the scope to exclude any such crushed glass surface products . . . .

Appx127.

Commerce adopted Cambria's exclusion of crushed glass, providing the following statement of scope in its notices of initiation:

> The merchandise covered by the investigation is certain quartz surface products. Quartz surface products consist of slabs and other surfaces created from a mixture of materials that includes predominately silica (e.g., quartz, quartz powder, cristobalite) as well as a resin binder . . . . However, the scope of the investigation only includes products where the silica content is greater than any other single material, by actual weight. . . .
>
>     . . . .
>
>     . . . Specifically excluded from the scope of the investigation are crushed glass surface products. Crushed glass surface products are surface products in which the crushed glass content is greater than any other single material, by actual weight.

Initiation of Less-than-Fair Value Investigation, 83 Fed. Reg. 22,613, 22,618 (May 16, 2018) (citation omitted); Initiation of Countervailing Duty Investigation, 83 Fed. Reg. 22,618, 22,622 (May 16, 2018) (Preliminary Scope). Commerce reiterated this Preliminary Scope in its preliminary

scope determination, and in its preliminary determinations in both investigations. Preliminary Affirmative Countervailing Duty Determination, 83 Fed. Reg. 47,881, 47,882 (Sept. 21, 2018); Preliminary Determination of Sales at Less than Fair Value, 83 Fed. Reg. 58,540, 58,542–43 (Nov. 20, 2018). In October 2018, the parties filed briefs addressing the Preliminary Scope.

On February 14, 2019, Cambria submitted a request (Scope Request) asking Commerce to accept new factual information and further "clarify" the scope. Cambria explained that it had intended the crushed glass exclusion to cover crushed glass products that "display visible pieces of crushed glass on their surfaces, giving them a distinct aesthetic compared to other quartz surface products." Appx562–63. Cambria explained that such products "serve a niche segment of the overall countertop market— i.e., countertops made from recycled materials that prominently display in a visible manner how they are an 'eco-friendly solution.'" Appx563. But in November 2018 and January 2019, Cambria had received advertisements and product descriptions from Chinese producers for "quartz glass" products that are visually similar to quartz products but contain higher amounts of glass. These producers suggested that they had recently begun offering "quartz glass" in response to high tariffs and emphasized that their quartz glass was not covered by the tariffs due to its higher glass content. Cambria requested that Commerce "clarify" the scope by limiting the crushed glass exclusion to crushed glass products with large pieces of glass visible across the surface. Appx569.

On March 12, 2019, Bruskin and other respondents requested a hearing on crushed glass scope issues. Commerce denied the request for a hearing, ruling it untimely under 19 C.F.R. § 351.310(c) because more than 30 days had passed since the preliminary determinations in both investigations. The parties filed factual information, case briefs, and rebuttal comments on the issue. Commerce also held

an ex parte meeting with Chinese producers and U.S. importers regarding scope.

Commerce then issued a decision modifying the crushed glass exclusion to what Cambria had requested:

> Specifically excluded from the scope of the investigation{s} are crushed glass surface products. Crushed glass surface products must meet each of the following criteria to qualify for this exclusion: (1) the crushed glass content is greater than any other single material, by actual weight; (2) there are pieces of crushed glass visible across the surface of the product; (3) at least some of the individual pieces of crushed glass that are visible across the surface are larger than one centimeter wide as measured at their widest cross-section (glass pieces); and (4) the distance between any single glass piece and the closest separate glass piece does not exceed three inches.

Appx1179 (Final Scope) (alteration in original). The same exclusion appears in Commerce's final determination and antidumping and countervailing duty orders. Final Affirmative Determination of Sales at Less than Fair Value, 84 Fed. Reg. 23,767, 23,770–71 (May 23, 2019); Final Affirmative Countervailing Duty Determination, 84 Fed. Reg. 23,760, 23,763 (May 23, 2019); Antidumping and Countervailing Duty Orders, 84 Fed. Reg. 33,053, 33,055–56 (July 11, 2019).

Bruskin appealed to the Court of International Trade. Bruskin argued that Commerce's scope modification was procedurally defective because Commerce should have considered Cambria's Scope Request to be a request to amend the petition and denied it as untimely and not properly submitted to the International Trade Commission. Bruskin asserted that it was entitled to a hearing on the crushed glass scope issue. Finally, Bruskin argued that Commerce erred

in finding that crushed glass of any kind was ever within the scope of the investigation.

The court sustained Commerce's scope modification. Mem. and Order, *M S Int'l, Inc. v. United States*, 493 F. Supp. 3d 1346 (Ct. Int'l Trade 2021) (No. 19-140), ECF No. 68; Mem. and Order, *M S Int'l, Inc. v. United States*, 493 F. Supp. 3d 1349 (Ct. Int'l Trade 2021) (No. 19-141), ECF No. 65. It entered partial judgment on the scope issue under USCIT Rule 54(b). *M S Int'l*, 493 F. Supp. 3d 1346; *M S Int'l*, 493 F. Supp. 3d 1349.

Bruskin timely appeals the trial court's partial judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

ANALYSIS

"We review a decision of the Court of International Trade evaluating an antidumping determination by Commerce by reapplying the statutory standard of review . . . . We will uphold Commerce's determination unless it is unsupported by substantial evidence on the record or otherwise not in accordance with the law." *Peer Bearing Co.-Changshan v. United States*, 766 F.3d 1396, 1399 (Fed. Cir. 2014) (citation omitted); 19 U.S.C. § 1516a(b)(1)(B)(i).

I

Bruskin argues that Commerce erred in accepting Cambria's Scope Request. In Bruskin's view, Commerce should have treated the Scope Request as a request to amend the petition, and thus denied it for not being submitted to the Commission under 19 U.S.C. § 1673a(b)(2) and 19 C.F.R. § 351.202(e) and for being untimely under Commerce's usual practices. Commerce responds that it changed the scope not pursuant to Cambria's Scope Request but under its authority to set the scope of an investigation in response to properly submitted information about potential evasion.

While "[t]he petition initially determines the scope of the investigation, . . . Commerce has inherent power to establish the parameters of the investigation, so that it would not be tied to an initial scope definition that may not make sense in light of the information available to Commerce or subsequently obtained in the investigation." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002) (cleaned up); *see also King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012) ("While petitioners and other interested parties in the investigation may propose the scope of merchandise to be investigated, Commerce alone defines the scope of the [antidumping] order."); *NTN Bearing Corp. of Am. v. United States*, 14 Ct. Int'l Trade 623, 627 (1990).

Commerce was not bound to the Preliminary Scope in this case. Commerce found the Preliminary Scope to be defective because Chinese producers and exporters could evade antidumping and countervailing duty orders by selling "quartz glass," so Commerce modified the scope to cure the defect. This reasoning is consistent with our case law.

Bruskin also argues that Commerce's scope modification was unlawful because it was contrary to the intent of the petitioner. Even if this were a limitation on Commerce's inherent authority to modify scope, we disagree that Commerce departed from the petitioner's intent here.

The Court of International Trade has held that Commerce owes deference to the petitioner's intended scope. *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 Ct. Int'l Trade 915, 924 (2009) (first citing 19 U.S.C. §§ 1673, 1673a(b); and then citing *NTN Bearing*, 14 Ct. Int'l Trade at 626) (ruling that a scope modification was contrary to law where an importer requested the change and the petitioner argued that the change would "open[] the door to circumvention"). Here, the Final Scope was no broader than the Petition Scope. When "defin[ing] or clarify[ing] the scope of an antidumping investigation" while staying

within the bounds of "the intent of the petition," Commerce "retains broad discretion." *Minebea Co. v. United States*, 16 Ct. Int'l Trade 20, 22 (1992). And "Commerce . . . may depart from the scope as proposed by a petition if it determines that petition to be 'overly broad, or insufficiently specific to allow proper investigation, or in any other way defective.'" *Ad Hoc Shrimp*, 33 Ct. Int'l Trade at 924 (quoting *NTN Bearing*, 14 Ct. Int'l Trade at 627). Commerce may set the scope "with the purpose in mind of preventing the intentional evasion or circumvention of the antidumping duty law." *Mitsubishi Elec. Corp. v. United States*, 12 Ct. Int'l Trade 1025, 1046 (1988); *NTN Bearing*, 14 Ct. Int'l Trade at 628 (discussing Congressional intent to prevent evasion).

Contrary to Bruskin's argument, Commerce gave appropriate deference to the petitioner's intent. Cambria's Petition Scope was ambiguous about crushed glass. While the focus of the Petition Scope was on crystalline forms of silica, such as quartz, it also defined the bounds of the scope by silica content and not crystal structure: the Preliminary Scope covered products made from "a mixture of materials that includes predominately silica." Because these statements of Cambria's intent are ambiguous about crushed glass, the Final Scope is not inconsistent with them. And although the crushed glass exclusion in the Preliminary Scope applies to quartz glass, Cambria explained in its Scope Request that it had in mind crushed glass products with large, visible pieces of glass and did not mean to place quartz glass outside the scope. Cambria then provided a new statement of its intended scope. Under these circumstances, Commerce gave appropriate deference to the petitioner's intent.

Bruskin argues that because Commerce is prohibited from reconsidering industry support after initiating its investigation, it should not be allowed to modify the scope in a way that could change the makeup of the domestic industry. Commerce must find that the petition has the support

of a certain fraction of domestic industry producers before initiating a countervailing duty or antidumping investigation. 19 U.S.C. §§ 1671a(c)(4)(A), 1673a(c)(4)(A). It may not revisit that determination after initiation. 19 U.S.C. §§ 1671a(c)(4)(E), 1673a(c)(4)(E). A scope modification or clarification at any stage could change the makeup of the domestic industry and reduce the fraction of the domestic industry that supports the petition. But that possibility does not nullify Commerce's authority to make scope determinations. *See Kyocera Solar, Inc. v. United States*, 253 F. Supp. 3d 1294, 1315–16 (Ct. Int'l Trade 2017) (holding that inclusion of additional sales was not reason to undermine Commerce's determination to modify scope in its final determination).

Bruskin relies on cases limiting Commerce's discretion to modify the scope after an antidumping or countervailing duty order has issued, whether expressly or through purported "clarifications" of the scope. *See Alsthom Atlantique v. United States*, 787 F.2d 565 (Fed. Cir. 1986); *Smith Corona Corp. v. United States*, 915 F.2d 683 (Fed. Cir. 1990); *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778 (Fed. Cir. 1995). Those cases do not apply here. Commerce modified the scope before any final determination or order issued, so Commerce enjoyed greater discretion. *See Duferco*, 296 F.3d at 1096–97 ("A purpose of the investigation is to determine what merchandise should be included in the final order," but once a final order has issued, "it can not be changed in a way contrary to its terms.").

Bruskin argues Commerce's treatment of the Second Scope Request differed from its treatment of the request in another investigation, Sodium Hexametaphosphate from the People's Republic of China (SHMP). In that case, Commerce denied petitioners' request to expand the scope of the investigation without filing an amended petition because a revision of scope after the preliminary determination is only appropriate where it constitutes "a clarification of

language already in the scope." *See* SHMP, 73 ITADOC 6,479 at cmt. 1 (Feb. 4, 2008). Commerce's analysis in SHMP is not binding on us and thus does not bear on whether Commerce's scope determination was in accordance with law and supported by substantial evidence. And unlike in SHMP, Cambria's Second Scope Request included new evidence of potential evasion. That evidence justified Commerce's decision to depart from its course in SHMP and modify the scope pursuant to its own authority.

Because Commerce did not have to consider the Second Scope Request to be a request to amend the petition, Commerce did not err in modifying the scope without requiring Cambria to file an amended petition with the International Trade Commission.

II

Bruskin next argues Commerce misapplied 19 C.F.R. § 351.310(c) and violated 19 U.S.C. § 1677c(a)(1) when denying its hearing request as untimely.

Under 19 U.S.C. § 1677c(a)(1), Commerce must "hold a hearing in the course of an investigation upon the request of any party to the investigation before making a final determination." The procedure for a party to request a hearing is found in 19 C.F.R. § 351.310(c):

> Any interested party may request that the Secretary hold a public hearing on arguments to be raised in case or rebuttal briefs within 30 days after the date of publication of the preliminary determination or preliminary results of review, unless the Secretary alters this time limit, or in a proceeding where the Secretary will not issue a preliminary determination, not later than a date specified by the Secretary.

Bruskin's March 12, 2019 request for a hearing came three months after Commerce issued its preliminary antidumping determination and more than four months after

Commerce issued its preliminary countervailing duty determination.

Bruskin argues that because Commerce's preliminary determinations did not address the crushed glass scope issue, it was an issue "where the Secretary will not issue a preliminary determination" under 19 C.F.R. § 351.310(c), so the 30-day deadline to request a hearing did not apply. But the regulation refers to "proceedings," not issues, on which Commerce does not issue a preliminary decision. Commerce issued a preliminary decision in these antidumping and countervailing duty proceedings, so the 30-day deadline applied.

Bruskin notes that the statute contains no 30-day deadline, suggesting that imposing one by regulation contradicts the statute. But Commerce may set such deadlines where the statute is silent, *Dofasco Inc. v. United States*, 390 F.3d 1370, 1372 (Fed. Cir. 2004), and must be permitted to enforce them in order to administer the trade remedy laws, *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1351 (Fed. Cir. 2015); *see also Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) ("Absent constitutional constraints or extremely compelling circumstances, the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." (cleaned up)).

Commerce's regulations provide for exceptions to deadlines, *see* 19 C.F.R. §§ 351.302, 351.310(c), but rather than requesting an exception, Bruskin has only argued that its hearing request was timely. The request was untimely under the clear language of 19 C.F.R. § 351.310(c), and so Commerce's denial was in accordance with the law.

Finally, Bruskin alludes to constitutional due process issues but provides no analysis. In view of the ample opportunity Commerce gave respondents to submit briefing and

factual information on this scope issue, Bruskin has not persuaded us that Commerce committed any due process violation.

## III

Finally, Bruskin argues that substantial evidence does not support certain fact findings by Commerce. Commerce explained, when modifying the scope, that "evidence on the record demonstrates that glass is made predominantly of silica, just as quartz is made of silica." Appx1188. Thus, Commerce determined it was necessary to include language that excluded certain crushed glass. Bruskin argues that a "product made of crushed glass is not 'predominately of silica' and is thus outside the scope of any order." Appellant's Br. 47. Bruskin argues that silica is merely an ingredient in glass that "undergoes a transformation" that makes the silica no longer "separable." Appellant's Br. 45–46.

Substantial evidence supports Commerce's finding. Commerce cited respondent Foshan Yixin's own test results showing that a sample of "crushed glass" purchased in China was 71.48% silica. Appx1188 (citing Appx986–89). And Foshan Yixin's other factual submissions include articles explaining that "[w]hat the term 'glass' means to most people . . . is a product made from silica ($SiO_2$)," Appx872–75, and "typical, modern soda-lime-silica glass (used to make bottles and windows)" is made from 73.6% silica, Appx869.

Bruskin is correct that glass can have significant non-silica components, meaning "[t]here is no single chemical composition that characterizes all glass." Appx869. But "[m]ost natural and artificial glasses are predominantly composed of silica with variable amounts of impurities," Appx880, thus, Commerce's understanding that glass could be within the scope is justified.

The cited evidence does not support Bruskin's assertions that silica loses its identity as silica when made into glass. Bruskin cites test results that it alleges show "that crushed glass product had a higher percentage of non-silica substances and the silica was no longer readily identifiable." Appellant's Br. 46 (citing Appx987–89). But one test result shows a crushed glass material found to be 71.48% $SiO_2$, contradicting Bruskin's assertions. The other result is an x-ray crystallography analysis that determined the glass sample was 100% amorphous, which says nothing about what molecules are present in the amorphous sample.

Bruskin also argues there is no substantial evidence of actual evasion and no substantial evidence that quartz glass products existed before Commerce initiated its investigation. Bruskin forfeited these arguments by failing to raise them before the Court of International Trade. *See* Mem. in Support of the Mot. for J. on the Agency R. at 14–16, *M S Int'l*, 493 F. Supp. 3d 1346 (No. 19-140), ECF No. 51 attach. 1. Further, Bruskin challenges facts that Commerce did not find or rely on. Commerce found only a *potential* for evasion—the scope modification was justified regardless of any actual evasion. Appx1173–74. The advertisements and product descriptions in Cambria's Scope Request provide substantial evidence for a finding of potential or likely evasion. And Commerce explained that the quartz glass products "*whether newly available or not*, may allow exporters and importers to avoid the payment of duties and undermine the effectiveness of any potential order." Appx1173–74 (emphasis added).

***

For these reasons, the judgment of the Court of International Trade is

**AFFIRMED**