FLORAL TRADE COUNCIL OF DAVIS, CALIFORNIA, Plaintiff,

v.

The UNITED STATES, Defendant,

and

Asociacion Colombiana de Exportadores de Flores, Defendant–Intervenor.

Court No. 88–10–00822.

United States Court of International Trade.

July 31, 1989.

See also 709 F.Supp. 229.

Stewart & Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Jimmie V. Reyna), for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commer-

cial Litigation Branch (Platte B. Moring, III), Civil Div., U.S. Dept. of Justice and Andrea Fekkes Dynes, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, for defendant.

Arnold & Porter (Patrick F.J. Macrory and C. Anthony Friedrich), for defendant-intervenor.

## OPINION

RESTANI, Judge:

In this action plaintiff, Floral Trade Council of Davis, California (FTC), challenges the determination of the Department of Commerce, International Trade Administration (ITA) that daisies are not within the scope of antidumping duty orders covering certain flowers from Colombia, Ecuador and Mexico. Public Record Document Number (PR) 37. The administrative proceedings leading to these orders covered seven specific flowers, standard and miniature (spray) carnations, standard and pompon chrysanthemums, alstroemeria, gerberas, and gypsophila. ITA treated all seven investigated flowers as a single class of merchandise. The International Trade Commission (ITC), on the other hand, found that seven different United States industries produced the seven flowers. *See Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT ——, 693 F.Supp. 1165 (1988) (*Asocolflores I*) and *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT ——, 704 F.Supp. 1068 (1988) (*Asocolflores II*). Included among the seven flowers are two daisy-like flowers, gerberas and daisy-type pompon chrysanthemums.[1] *See* 51 Fed.Reg. 21,947, 21,948, and 21,950 (June 17, 1986) (notices of initiation of investigation). "Daisies" are not a flower species or subspecies. There are, however, several flowers which are commonly referred to as daisies and some of these are found within the chrysanthemum genus. They include marguerite daisies, oxeye daisies and shasta daisies. Gerbera daisies are not within the same genus.

FTC appears to argue that because "chrysanthemums" are discussed in its petition for relief as to the seven flowers, and because the word "daisies" is mentioned there, as well as in some questionnaire responses, that all chrysanthemums, including all daisies which fall within the botanical genus "chrysanthemum," are included within the scope of the resulting orders. ITA states that the petition filed by FTC, and the various notices issued by ITA with regard thereto, specifically mention seven flowers, including two types of chrysanthemums, but do not mention "daisies" as a specifically covered flower. As secondary reasons, ITA states that the physical characteristics of pompon and standard chrysanthemums differ from those of "daisies" and that the expectation of ultimate purchasers differ with regard to "daisies" as opposed to "chrysanthemums."

Apparently, marguerite daisies, and perhaps others, are now of concern to FTC. The petition does not specifically discuss marguerite daisies or any other daisy, apart from the previously mentioned gerbera daisies and daisy pompon chrysanthemums. FTC, however, relies heavily on the listing of various daisies in an appendix to the petition. PR 1, Appendix 2. In the appendix, an excerpt from D. Wyman, *Wyman's Gardening Encyclopedia* (rev. ed. 1977), the daisies are listed as part of the overall description of the genus "chrysanthemum." Because FTC in its petition did not discuss daisies in the same way that it discussed the seven flowers to be investigated, ITC had to determine whether the petition implicitly covered daisies. Despite a few minor ambiguities, the petition does not indicate that an investigation of daisies was requested. Furthermore, apart from some isolated and ambiguous references to daisies in several questionnaire responses, the investigation does not deal with "daisies." The court considers it highly inappropriate of FTC to cite the word "daisies" as it refers to daisy-type pompon chrysanthemums in questionnaire responses as

---

1. Apparently, the other major type of pompon chrysanthemum is the cushion type.

if that is a reference to daisies such as marguerites.

It seems odd to the court that the petition and investigation would speak of pompon chrysanthemums, standard chrysanthemums and gerbera daisies (which are in another genus), if all daisies were intended to be covered as part of the chrysanthemum genus.[2] The simple fact is that FTC did not ask for an investigation of every flower that is classified in the chrysanthemum genus. Furthermore, it has not even argued that all of the "daisies" that it wishes investigated are covered by the specific terms "standard chrysanthemums" or "pompon chrysanthemums," which were clearly among the flowers to be investigated. ITA's conclusion that "daisies" were not discussed in the petition is essentially correct. "Daisies" were not discussed as a product to be investigated.

FTC also takes issue with ITA's secondary reasoning. In an effort to be comprehensive, ITA attempted to apply the analysis applicable to newly developed products to this case of an existing product. *Diversified Prods. Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983), sets forth four criteria for determining whether a new product is included within the scope of an existing order: physical characteristics, expectation of the ultimate purchaser, use, and channels of trade. There may be other factors as well. In any case, ITA found differences at least in the first two factors. The record also reveals some specific use differences.

Besides arguing that this analysis is wholly inappropriate,[3] FTC argues that the four factors, particularly the last two, use and channels of trade, reveal substantial similarities. FTC, however, is in somewhat of an awkward position in making these arguments. As indicated, ITC concluded that there were seven different domestic flower industries, largely based on criteria like the four mentioned here. The early litigation revealed that there was little support for the proposition that the United States cut-flower industry as a whole was in an injured state. Thus, without the separate industry findings, ITC apparently would not have found injury, and no antidumping orders would have issued.[4] FTC argued in support of ITC's view that there were significant differences among the flowers. *See supra Asocolflores I.* Thus, the court is not persuaded to any great degree by FTC's new arguments that there are no significant differences among these flowers because general use and channels of trade are similar, as they are for most of the seven flowers. The record indicates that there are significant physical differences and differences in purchaser expectations between flowers which are commercially described as either standard or pompon chrysanthemums on one hand, and flowers which are commercially described as "daisies" on the other hand. Although this secondary reasoning was unnecessary, it is also found to be supported.

Accordingly, after having reviewed the record, including the petition and prior ITC

---

**2.** The court finds *Mitsubishi Elec. Corp. v. United States*, 12 CIT ——, 700 F.Supp. 538 (1988) inapposite. *Mitsubishi* dealt with the question of whether certain subassemblies of merchandise were properly included within the scope of an antidumping investigation. In affirming ITA's scope determination, the court emphasized that the petitioner had, in the petition and during the investigation, clearly evinced its intent and purpose to include discrete subassemblies within the scope of the investigation. No such clear expressions of intent and purpose, with regard to daisies generally, is apparent here from either the petition or the administrative proceedings leading up to the final determinations. Furthermore, the court noted in *Mitsubishi* that any lack of specificity in the petition was understandable given the fact that the petition was drafted in the context of "a quickly

developing new industry where precise technical language and available knowledge to describe the industry practices and tactical maneuvering of importing was scant or unavailable." *Mitsubishi,* 700 F.Supp. at 554 (citation omitted). No such constraints on petitioner were present in this case.

**3.** This type of analysis may be of use to ITA in making scope determinations regarding pre-existing products, especially if ITA is attempting to interpret an ambiguous petition.

**4.** 19 U.S.C. § 1673 (1982) requires both a finding of dumping and a finding that a domestic industry is materially injured by reason of dumped imports in order for antidumping duties to be imposed.

and ITA statements with regard to the covered products, the court finds that ITA's determination that daisies are not included within the scope of its antidumping orders, is substantially supported by the record.

## JUDGMENT

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED: that the court hereby affirms the determination of the International Trade Administration with respect to the scope of its antidumping orders covering certain flowers from Colombia, Ecuador and Mexico.