SPRINGWATER COOKIE & CONFECTIONS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND NATIONAL CANDLE ASSOCIATION, DEEFENDANT-INTERVENOR

(Court No. 95–03–00283)

(Dated September 25, 1996)

*Thompson, Hine and Flory, PLL (Mark R. Sandstorm)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Mark B. Ehrlich), David W. Richardson,* Attorney Advisor, United States Department of Commerce, of counsel, for defendant.
*Barnes & Thornburg (Randolph J. Stayin)* for defendant-intervenor.

OPINION

RESTANI, *Judge:* Plaintiff Springwater Cookie & Confections, Inc. ("Springwater") filed this response challenging the defendant United States Department of Commerce's ("Commerce") final redetermination that the Holly Feather Twist Candles ("Holly candles") and the Christmas Feather Twist Candles ("Christmas candles") are within the "class or kind of merchandise" covered by the antidumping duty order issued in *Petroleum Wax Candles from the People's Republic of China,* 51 Fed. Reg. 30,686 (Dep't Comm. 1986) (antidumping duty order). Springwater contends that Commerce's final redetermination was unsupported by substantial evidence on the agency record and not in accordance with the law. The court sustains Commerce's findings for the Christmas candles and reverses Commerce's findings for the Holly candles, holding that the Holly candles are not within the scope of the antidumping order, pursuant to 19 C.F.R. § 353.29(i)(1) (1994).

BACKGROUND

On July 7, 1986, Commerce found that candles from the People's Republic of China ("PRC") were being sold in the United States at less than fair market value. *Petroleum Wax Candles from the People's Republic of China,* 51 Fed. Reg. 25,085 (Dep't Comm. 1986) (final detrm. of LTFV sales) *("Final Det.").* On August 28, 1986, Commerce issued an antidumping duty order, containing the following description of the merchandise covered by the order, "[C]ertain scented or unscented petroleum wax candles made from petroleum wax and having fiber or paper-cored wicks * * * sold in the following shapes: tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and various wax-filled containers." 51 Fed. Reg. at 30,686.

On September 21, 1987, a United States Customs Service Information Exchange letter was issued indicating that certain novelty candles would not be considered within the scope of the antidumping duty order:

The Department of Commerce has determined that certain novelty candles, such as Christmas novelty candles, are not within the

scope of the antidumping duty order on petroleum-wax candles from the People's Republic of China (PRC). Christmas novelty candles are candles specially designed for use only in connection with the Christmas holiday season. This use is clearly indicated by Christmas scenes or symbols depicted in the candle design. Other novelty candles not within the scope of the order include candles having scenes or symbols of other occasions (e.g., religious holidays or special events) depicted in their designs, figurine candles, and candles shaped in the form of identifiable objects (e.g., animals or numerals).SPRINGWATER COOKIE & CONFECTIONS, INC

Administrative Record ("A.R.") Doc. 7, at 1.

On August 23, 1994, Springwater submitted a request to Commerce for a scope inquiry, seeking a ruling excluding the Holly candles and Christmas candles from the scope of the antidumping duty order on the basis that the candles fell within the novelty exclusion notice. A.R. Doc. 8, at 3–6. In its submission to Commerce, Springwater described the physical characteristics of the Holly candles to Commerce as a:

> [s]et of two wax twisted candles, each imprinted with four similar designs of Christmas Holly molded into the candle and painted red and green. The remainder of each candle is white. Each candle is approximately ten inches tall. The candles are packaged in a green box with the label, "Holiday Candles."

*Id.* at 2. Springwater described the Christmas candles as a:

> [s]et of two wax twisted candles, with each lip colored in red and green alternately. Each candle is approximately ten inches tall. The candles are packaged in a red and green colored box with the label, "Christmas Feather Twist Candles," and a rendering of a Christmas tree on both front and back.

*Id.*

On February 14, 1995, Commerce issued a final scope ruling with regard to petroleum wax candles from the PRC imported by Springwater. A.R. Doc. 13. Commerce found that the Holly candles and Christmas candles are ten-and-one-half-inch tall spiral candles made of petroleum wax with fiber wicks and, facially, within the scope of the antidumping duty order. *Id.* at 3–4. To determine whether the candles should be excluded, Commerce applied the following procedure:

> [I]n considering whether a particular product is within the class or kind of merchandise described in an existing order, the Secretary will take into account the following:
>
> (1) The descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary and the Commission.
>
> (2) When the above criteria are not dispositive, the Secretary will further consider:
>
> (i) The physical characteristics of the product;
> (ii) The expectations of the ultimate purchasers;
> (iii) The ultimate use of the product; and
> (iv) The channels of trade.

19 C.F.R. § 353.29(i). As Commerce determined that the descriptions of the candles were dispositive, no formal scope inquiry was warranted. *Id.* at 2.

On April 13, 1995, Springwater filed a complaint pursuant to 19 U.S.C. § 1516a for review of Commerce's final scope ruling. On October 16, 1995, Springwater filed a motion for summary judgment on the agency record challenging Commerce's determination that Springwater's candles fell within the scope of the antidumping duty order and that no formal scope inquiry was warranted.

On January 24, 1996, defendant filed a consent motion requesting that the court remand the case to Commerce. The court granted the motion on February 12, 1996. During the 90-day remand period, Springwater did not submit additional evidence to Commerce in support of its position. On April 29, 1996, Commerce submitted the draft redetermination to Springwater and defendant-intervenor for their examination and invited the parties to submit any comments on the draft results by May 3, 1996. No comments were submitted. On May 13, 1996, Commerce filed the final results of its redetermination ("Final Redetermination") with the court, which was consistent with its final scope ruling in finding that Springwater's candles are within the scope of the antidumping duty order.

On June 7, 1996, Springwater filed a response to the Final Redetermination requesting the court to grant its motion for judgment upon the agency record or, in the alternative, remand the case to Commerce with instructions to perform an investigation in accordance with the criteria set forth in 19 C.F.R. § 353.29(i)(2).

### STANDARD OF REVIEW

In reviewing final determinations in antidumping duty investigations, the court will uphold those determinations by Commerce unless they are found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

### DISCUSSION

The Holly and Christmas candles are spiral wax candles made from petroleum wax and having fiber or paper cored-wicks imported from the People's Republic of China. Except for the exclusion for novelty Christmas candles, the candles would appear to fall within the scope of the antidumping order on petroleum wax candles from the PRC. After reviewing Springwater's request for a scope inquiry, Commerce determined that there were no distinguishing characteristics providing such a basis for the candles' exclusion.

The class or kind of merchandise encompassed by a final antidumping duty order is determined by the order, which is interpreted with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order. *Smith-Corona Corp. v. United States,* 915 F.2d 683, 685 (Fed. Cir.

1990). In a scope determination involving a new product, Commerce should examine the product in light of the *Diversified Prods.* criteria to determine whether the product is of the class or kind of merchandise contemplated by the antidumping duty order. *Id.* at 687 (referring to factors set forth in *Diversified Prods., Corp. v. United States,* 6 CIT 155, 162, 572 F. Supp. 883, 889 (1983), and now found at 19 C.F.R. § 353.29(i)(2)). If the descriptions to be relied upon according to § 353.29(i)(1) are dispositive for the scope determination, Commerce is instructed to issue a final scope determination based upon the descriptions alone. *See* 19 C.F.R. §§ 353.29(i)(1)–(2); *see also Nitta Indus. Corp. v. United States,* 997 F.2d 1459, 1461 (Fed. Cir. 1993) (finding where description in antidumping order is sufficient to evaluate whether product falls within scope of order, there is no need to look to other factors).

Commerce determined that an analysis of the description of the Holly and Christmas candles pursuant to 19 C.F.R. § 353.29(i)(1) is sufficiently dispositive to place them within the scope of the antidumping duty order. A.R. Doc. 13, at 2. Springwater argues otherwise, specifically citing previous Commerce scope determinations to support its position, that these candles should be either excluded because their descriptions are dispositive under § 353.29(i)(1) or, alternatively, analyzed under the *Diversified* factors pursuant to 19 C.F.R. § 353.29(i)(2).

Springwater argues that the holly sprigs depicted in the Holly candles' design are "symbols" clearly indicating their use only in the Christmas holiday season. Plaintiff supports this argument by citing a final scope determination with regard to petroleum wax candles from the PRC imported by Success Sales, Inc.. Pl.'s Mot. For J. on the Agency R., Ex. B. (hereinafter *"Success Sales"*). In *Success Sales,* Commerce ruled that Success Sales' "Christmas Bells" candles fell outside of the antidumping order, reasoning that the candles' use of "holiday bows and bells set against pine boughs, is consistent with products designed primarily for use in connection with the holiday season." *Id.* at 3. Springwater argues that, just as bows and bells are consistent with products designed with the holiday season, so are the holly sprigs depicted on the Holly candle. Commerce attempts to distinguish *Success Sales* by stating that it is the *combination* of bows, bells, tree boughs, and coloring consistently associated with Christmas which clearly indicates a use only in connection with the Christmas season. The court notes, however, that the Holly candle, although mostly white, uses red and green, colors also used by the "Christmas Bells" candle, and features a holly sprig, a symbol also associated with Christmas.

Commerce, however, argues that the Holly candles should be compared to candles, numbered 10031 and 10033 in its final scope ruling with regard to petroleum wax candles from the PRC imported by Primark International. *Id.*, Ex. C. (hereinafter *"Primark Int'l"*). In *Primark Int'l,* where the containers for candles 10031 and 10033, and their lids, had designs of flowers, leaves, and berries on them, Commerce ruled that "[t]hese designs do not depict a 'scene or symbol' of any spe-

cific occasion or special event. Therefore, candles 10031 and 10033 are within the scope of the order." *Id.* at 3. As the holly sprigs are indeed a symbol associated with Christmas and "flowers, leaves, and berries" are not, the Holly candle is better compared to the Christmas bells candle in *Success Sales.*

The Holly candle also cannot be compared to the "Jingle Bells" candle ruled to be within the scope of the antidumping duty order in Commerce's final scope ruling with regard to petroleum wax candles from the PRC imported by Two's Company, Inc. *Id.*, Ex. A. (hereinafter "*Two's Co.*"). As Commerce determined that the bells on the "Jingle Bells" candle in *Two's Co.* "can be removed from the candles without damage to the pillars" and the holly springs cannot be removed from the Holly candles, these candles are sufficiently different to preclude a comparison. *See id.* at 4.

Commerce has not expressed any intention of or rational reasons for deviating from its method of analysis in similar cases. The Holly candle is clearly like the Christmas bells candle in *Success Sales* and easily distinguishable from candles found to be within the scope of the order. Commerce's choice was not one between two fairly conflicting views, but was erroneous under the governing principles, and not supported by substantial evidence. Thus, Commerce should have determined that the Holly candle was outside the scope of the antidumping duty order. Accordingly, Commerce's determination in the Final Scope Ruling that the Holly candle was within the scope of the antidumping duty order is reversed.

Turning to the next product, to support its argument that the Christmas candle should be considered outside the scope of the antidumping order Springwater cites Commerce's final scope determination with regard to petroleum wax candles from the PRC imported by Cherrydale Farms Confections. Def.'s Mem. in Opp. to Pl.'s Resp., Ex. 1 (hereinafter "*Cherrydale*"). In that matter, Commerce found that, "[a]lthough not conclusive, the scene on these candles, the scent, the red color and the label 'Holiday Candle' all point to use during Christmas." *Id.* at 4. Commerce, however, also stated that the depiction of "the winter scene does not limit its use to a special event or occasion such as Christmas." *Id.* at 3. Commerce reasoned that, because the winter scene candle is packaged with a candle that is clearly outside the scope of the order, it "considered additional criteria to determine if the imported article as a whole is covered by the order on candles from the PRC." *Id.* As the Christmas candle is not packaged with another candle that is clearly outside the scope of antidumping duty order, *Cherrydale* does not support Springwater's contention that the Christmas candle should either be excluded or analyzed under the *Diversified Prods.* criteria. Commerce also looked to the color as one factor to be considered in a *Diversified Prods.* analysis pursuant to § 353.29(i)(2). *Id.* at 3–4.

Furthermore, in Commerce's final scope ruling with regard to petroleum wax candles from the PRC imported by A.J. Cohen, Def-Interve-

nor's Resp. to Pl.'s Resp., Ex. 7 (hereinafter *"A.J. Cohen"),* Commerce ruled that the red and gold colors of candle set No. 155 do not exclude a candle from the scope of the antidumping duty order. *Id.* at 4. Commerce noted that:

> the language of the Customs Notice * *·* describes Christmas candles as candles whose "use is clearly indicated by Christmas scenes and symbols depicted in the candle design." After carefully viewing the candles in this set, we do not believe that there is anything in their design which clearly depicts Christmas scenes or symbols.

*Id.* Commerce's determination in *A.J. Cohen* appears to stand for the proposition that colors *per se* will not exempt a candle from the scope of the antidumping duty order. There is nothing erroneous about this point of view.

Accordingly, applying criteria which pre-date the remand determination, Commerce correctly determined that the description of the merchandise covered by the 1986 antidumping order is dispositive with respect to the Christmas candle submitted for evaluation by Springwater. The description is also dispositive as to the Holly candles, but with the opposite result. In sum, there is no need to analyze these products pursuant to *Diversified Prods.* factors. The descriptions of the merchandise, when compared to the scope language and past Commerce determinations, produce the complete answer. The Christmas candles are within the scope of the antidumping duty order, while the Holly candles are not.

As Commerce has no further decisions to make on this matter, the parties shall not further report to the court and final judgment will now issue.