Slip Op. 06-10

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| VERTEX INTERNATIONAL, INC., | : | |
| | : | |
| Plaintiff, | : | Before: Restani, Chief Judge |
| | : | |
| v. | : | Court No. 05-00272 |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____:

[Scope determination on Vertex International, Inc.'s garden carts from the People's Republic of China REMANDED for exclusion of the garden carts.]

Dated: January 19, 2006

Neville Peterson LLP (Curtis W. Knauss, John M. Peterson, and George W. Thompson) for plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Stephen C. Tosini), Carrie Owens, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

## OPINION

Restani, Chief Judge: Plaintiff Vertex International, Inc. ("Vertex") moves for judgment on the agency record pursuant to USCIT R. 56.2, claiming that the U.S. Department of Commerce ("Commerce") improperly ruled that its "garden carts" were within the scope of an antidumping duty order on hand trucks from the People's Republic of China. See Final Scope Ruling on the Antidumping Duty Order on Hand Trucks from the People's Republic of China, U.S. Dep't of Commerce Internal Memorandum from Wendy J. Frankel to Barbara E. Tillman (Feb. 15, 2005), P.R. Doc. 3, Def.'s App. Tab 3 [hereinafter Final Scope Ruling].

On December 27, 2004, Vertex requested a ruling from Commerce to determine whether its garden carts fell within the scope of Commerce's antidumping duty order on hand trucks from the People's Republic from China.[1]  See Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 70,122 (Dep't of Commerce Dec. 2, 2004) (notice of antidumping duty order) [hereinafter Antidumping Duty Order or "Order"].  In an unpublished ruling, Commerce found that the garden carts exhibited all of the essential physical characteristics of hand trucks as outlined by the Antidumping Duty Order and were within the scope of the Order.  See Final Scope Ruling, Def.'s App. Tab 3, at 7.  Vertex contends that Commerce's Final Scope Ruling is not supported by substantial evidence on the record and is otherwise not in accordance with law.  This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000).

## I.  BACKGROUND

**A.      The Hand Truck Order**

On December 2, 2004, Commerce published an antidumping duty order concerning hand trucks from the People's Republic of China.  Antidumping Duty Order, 69 Fed. Reg. at 70,122.  The Order covers hand trucks "manufactured from any material, whether assembled or unassembled, complete or incomplete, suitable for any use, and certain parts thereof, namely the vertical frame, the handling area and the projecting edges or toe plate, and any combination thereof."  Id.  It states that the covered product is commonly referred to as a "hand truck, convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly,

---

[1]Vertex is an importer based in Watertown, Minnesota, and sells garden and yard products.

or hand trolley," and typically imported under three subheadings of the Harmonized Tariff

Schedule of the United States ("HTSUS"): 8716.80.50.10; 8716.80.50.90; and 8716.90.50.60.[2]

Id.

The Order gives the following description of a hand truck:

A complete or fully assembled hand truck is a hand-propelled barrow consisting
of a vertically disposed frame having a handle or more than one handle at or near
the upper section of the vertical frame; at least two wheels at or near the lower
section of the vertical frame; and a horizontal projecting edge or edges, or toe
plate, perpendicular or angled to the vertical frame, at or near the lower section of
the vertical frame.  The projecting edge or edges, or toe plate, slides under a load
for purposes of lifting and/or moving the load.

That the vertical frame can be converted from a vertical setting to a horizontal
setting, then operated in that horizontal setting as a platform, is not a basis for
exclusion of the hand truck from the scope of this petition.  That the vertical
frame, handling area, wheels, projecting edges or other parts of the hand truck can
be collapsed or folded is not a basis for exclusion of the hand truck from the scope
of the petition.  That other wheels may be connected to the vertical frame,
handling area, projecting edges, or other parts of the hand truck, in addition to the
two or more wheels located at or near the lower section of the vertical frame, is

---

[2]The relevant parts of HTSUS subheading 8716 provides:

8716   Trailers and semi-trailers; other vehicles, not mechanically propelled; and parts thereof:

8716.80        Other vehicles:

. . .

8716.80.50.10                Industrial hand trucks

8716.80.50.90                Other

8716.90        Parts:

. . .

8716.90.50.60                Other

not a basis for exclusion of the hand truck from the scope of the petition. Finally, that the hand truck may exhibit physical characteristics in addition to the vertical frame, the handling area, the projecting edges or toe plate, and the two wheels at or near the lower section of the vertical frame, is not a basis for exclusion of the hand truck from the scope of the petition.

Id.

The language as to the scope of the investigation remained the same from the notice of the initiation of investigation through the preliminary and final determination of sales at less than fair value, and the Antidumping Duty Order. See Hand Trucks and Certain Parts Thereof from the People's Republic of China, 68 Fed. Reg. 68,591 (Dep't of Commerce Dec. 9, 2003) (initiation of antidumping duty investigation); Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 29,509 (Dep't of Commerce May 24, 2004) (preliminary determ. and postponement of final determ.); Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 60,980 (Dep't of Commerce Oct. 14, 2004) (final determ.); Hand Trucks and Certain Parts Thereof from the People's Republic of China, 69 Fed. Reg. 65,410 (Dep't of Commerce Nov. 12, 2004) (amended final determ.); Antidumping Duty Order, 69 Fed. Reg. at 70,122.

## C.    Vertex's Arguments

Vertex argues that Commerce's ruling that its garden carts are within the scope of the Order because they exhibited all the physical characteristics of hand trucks is unsupported by substantial evidence. Vertex argues that Commerce should not have ended its scope inquiry at an examination under 19 C.F.R. § 351.225(k)(1) (2005) but should have conducted an inquiry under the test set forth in Diversified Products Corp. v. United States, 6 CIT 155, 162, 572 F. Supp.

883, 889 (1983) (codified in 19 C.F.R. § 351.225(k)(2) (2005)).[3] See Letter from Vertex Int'l, Inc. to Dep't of Commerce, Int'l Trade Admin. (Dec. 27, 2004), P.R. Doc. 1, Def.'s App. Tab 1, at 6 [hereinafter Request for Scope Ruling].

In arguing that an inquiry under § 351.225(k)(1) is not dispositive in this case, Vertex first claims that the language of the Order is ambiguous and does not specifically include or exclude its garden carts. Vertex argues that while the Order covers hand trucks known by other names – "convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly, or hand trolley" – it does not cover products like carts, garden carts, or caddies. (Pl.'s Br. 9–10.)

Additionally, Vertex distinguishes the use of its garden carts from the use of hand trucks. Vertex claims that unlike hand trucks, its garden carts are not used primarily to transport objects but are used primarily for organizing, storing, and holding equipment and supplies. The garden carts' hollow, plastic wheels are also designed for use on grass and soil surfaces, rather than on sidewalks, curbs and other rough surfaces. Vertex claims that the tires on its garden carts would deform or break if the garden carts are used to carry heavy loads or used to move loads over rough or uneven terrains. (Pl.'s Br. 10.)

Vertex also argues that its garden carts do not have all of the same characteristics as hand trucks. While a garden cart has a vertical frame, handle, and two wheels, Vertex contends that the subject cart's "stabilizing plate" is not a projecting edge or toe plate as defined

---

[3] 19 C.F.R. § 351.225(k) outlines the procedures that Commerce should follow when interpreting the scope of an antidumping duty order. Id. First, Commerce considers the three factors articulated in 19 C.F.R. § 351.225(k)(1). Id. If such an inquiry is not dispositive, Commerce considers the additional five factors articulated in 19 C.F.R. § 351.225(k)(2). Id.

by the Order. (Pl.'s Br. 15–16.) The Order provides that a hand truck has "a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame. The projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load." Antidumping Duty Order, 69 Fed. Reg. at 70,122. While the garden cart's "stabilizing plate" is made from steel wire welded into a grid pattern that projects out horizontally from the bottom of the vertical frame, Vertex argues that this stabilizing plate does not "readily 'slide under' a load" as the Order requires. Request for Scope Ruling, Def.'s App. Tab 1, at 6. Additionally, the stabilizing plate does not have a large carrying capacity, and the garden cart itself has no "centrally positioned frame member against which a stabiliz[ing] plate load can be balanced." Id., Def.'s App. Tab 1, at 5.

After arguing that an inquiry under § 351.225(k)(1) is not dispositive, Vertex argues that under a § 351.225(k)(2) inquiry, its garden carts are outside the scope of the Order.[4]

## D.     Industry Response

On January 19, 2005, the petitioners, Gleason Industrial Products, Inc. and Precision Products, Inc., stated their view that Vertex's garden carts were excluded from the scope of the Order. See Letter from Gleason Indus. Prods., Inc. & Precision Prods., Inc. to Donald L. Evens, Sec'y of Commerce, U.S. Dep't of Commerce (Jan. 18, 2005), P.R. Doc. 2, Def.'s App. Tab 2, at 2. Although the petitioners did not accept Vertex's argument that its garden carts should be excluded based on their intended use in gardening because the Order specifically stated that hand trucks could be "suitable for any use," the petitioners did agree that

---

[4]As this opinion must focus upon Commerce's "interpretation" of the Order, it is unnecessary to examine Vertex's arguments under § 351.225(k)(2) at this juncture.

Vertex's garden carts do not have all of the characteristics of hand trucks as outlined in the

Order. The petitioners reasoned that because the projecting plate of the subject garden cart does

not "readily 'slide under' a load," Vertex's product is excluded from the scope of the Order. Id.

In other words, the petitioner advised Commerce that Vertex's carts are not within the scope of

the Order because they are unambiguously excluded by the Order. The court agrees.

## II. JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(c). The court will affirm

Commerce's scope determination if it is supported by substantial evidence and in accordance

with the law. See 19 U.S.C. §§ 1516a(b)(1)(B)(i), 1516a(a)(2)(B)(ii), 1516a(a)(2)(B)(vi) (2000).

## III. DISCUSSION

**A.      Relevant law**

In examining whether a particular product is within the scope of an antidumping

duty order, Commerce follows the two-step process set forth in 19 C.F.R. § 351.225(k). Under

§ 351.225(k)(1), Commerce examines "[t]he descriptions of the merchandise contained in the

petition, the initial investigation, and the determinations of the Secretary [of Commerce]

(including prior scope determinations) and the [International Trade] Commission." 19 C.F.R.

§ 351.225(k)(1). If an examination of the three sources in § 351.225(k)(1) is not dispositive of

the scope, Commerce then considers the five factors found in 19 C.F.R. § 351.225(k)(2): "(i)

[t]he physical characteristics of the product; (ii) [t]he expectations of the ultimate purchasers;

(iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold;

and (v) [t]he manner in which the product is advertised and displayed." Id.

Although § 351.225(k) offers the interpretive rules for scope determinations when

the description of a product is written in general terms, there are "circumstances in which an order's relevant terms are unambiguous." Allegheny Bradford Corp. v. United States, 342 F. Supp. 2d 1172, 1184 (CIT 2004). In such cases, Commerce may rule based upon the language of the Order itself because "[t]he language of an order is the 'cornerstone' of a court's analysis of an order's scope." Id. (quoting Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097–98 (Fed. Cir. 2002)). Furthermore, Commerce cannot "make a scope determination that conflicts with an order's terms, nor can it interpret an order in a way that changes the order's scope." Id. (citing Duferco, 296 F.3d at 1087, 1094–95).

## B.  Commerce's final scope ruling is erroneous

As indicated, in its unpublished final scope ruling, Commerce found that Vertex's garden carts were within the scope of the Antidumping Duty Order. Commerce found that the garden carts were not automatically excluded from the Order even though they were equipped with additional parts not mentioned in the Order and even though they were primarily used for the storage and organization of tools.[5]

---

[5]As a preliminary matter, Commerce properly found that the presence of additional features on the garden cart, an upper rack and lower rack, does not exclude it from the scope of the Order. The additional features of the garden cart do not automatically exclude it from the Order because the Order specifically provides that "the hand truck may exhibit physical characteristics in addition to the vertical frame, the handling area, the projecting edges or toe plate, and the two wheels at or near the lower section of the vertical frame." Antidumping Duty Order, 69 Fed. Reg. at 70,122 (emphasis added).

Commerce also correctly rejected Vertex's argument that the primary use of its garden cart automatically excluded it from the scope of the Order. Commerce noted that the scope of the Order specifically covers hand trucks "suitable for any use." Id. Accordingly, the fact that the subject cart can be used for gardening and the storage and organization of gardening tools does not automatically exclude it from the scope of the Order.

In making its scope determination, Commerce claimed to have "evaluated

Vertex's request in accordance with 19 CFR 351.225(k)(1) and [found] that the descriptions of

the product contained in the petition, the initial investigation, the determinations by the Secretary

. . . and the ITC are . . . dispositive with respect to Vertex's Cart." Final Scope Ruling, Def.'s

App. Tab 3, at 5.[6]   The government now argues that the terms of the Order were unambiguous

and that further review was unnecessary.  A review of Commerce's analysis in its scope ruling

shows that although it did review the petition and a prior scope determination as mentioned in

the regulation, Commerce based its ruling upon the language of the Order itself.  While

Commerce may base its ruling on the unambiguous language of an order, see Duferco Steel, 296

F.3d at 1096, here, that unambiguous language excludes rather than includes the garden carts.

In the present case, the Antidumping Duty Order specifically lays out the

characteristics of a hand truck as:

consisting of a vertically disposed frame having a handle or more than one handle

---

Additionally, Vertex fails to argue convincingly that the Order does not cover its garden cart simply because the Order does not refer explicitly to it by its name.  First, the scope language is unambiguous in treating the listed names of the articles as examples, not as an exhaustive list. See Antidumping Duty Order, 69 Fed. Reg. at 70,122 ("Examples of names commonly used to reference hand trucks are hand truck, convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly, or hand trolley.").  Second, the court of appeals has recognized that it is unnecessary to "'circumscribe the entire universe of articles' that might possibly fall within the order." Novosteel SA v. United States, 284 F.3d 1261, 1269 (Fed. Cir. 2002) (citing Nitta Indus. Corp. v. United States, 997 F.2d 1459, 1464 (Fed. Cir. 1993)).  Rather than state each and every product that is covered by an order, Commerce gives a "description[] of [the] subject merchandise [that is] written in general terms."  19 C.F.R. § 351.225(a); Novosteel, 284 F.3d at 1269–70.  Thus, even though the Order did not specifically refer to a garden cart, the absence of a direct reference does not automatically exclude it from the Order.  See id.

[6]Commerce then found that "it [is] unnecessary to consider the additional factors in 19 CFR 351.225(k)(2)."  Final Scope Ruling, Def.'s App. Tab 3, at 5.

at or near the upper section of the vertical frame; at least two wheels at or near the lower section of the vertical frame; and a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame.

Antidumping Duty Order, 69 Fed. Reg. 70,122. In its Final Scope Ruling, Commerce properly identified the four key characteristics of a hand truck – a vertical frame, a handle, at least two wheels, and a projecting edge or toe plate – and it is uncontested that the subject garden cart possesses the first three characteristics of a hand truck. Commerce failed, however, to cite record evidence demonstrating that the garden cart possessed a toe plate as defined by the Order and ignored contrary evidence.

The Order defines "projecting edge or toe plate" according to its function. Specifically, it states that "[t]he projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load."[7] Id. Although Commerce specified that a hand truck may be "suitable for any use," the "any use" language is limited by this sentence which requires that a hand truck's toe plate slide under a load to lift or move it. Commerce must give effect to this sentence, which states an essential physical characteristic of the articles included within the scope and specifies the purpose for which the horizontal projecting edge or toe plate must be designed.

Having specifically defined "toe plate," Commerce did not properly analyze whether the garden cart's stabilizing plate is a toe plate that slides under a load to lift or move it. The Final Scope Ruling's only consideration of whether the garden cart's "toe plate" falls within

---

[7]Commerce included this sentence without variation from the initiation of the investigation through the preliminary and final determination of sales at less than fair value and the final Order.

the terms of the Order consists of the following statement:

> Although Vertex asserts that the Cart's toe plate is "too thick to slide under a load conveniently," and the Petitioners assert that the toe plate's inability to "slide" under a load implies that the Cart does not fit in the definition of the scope of the Order, neither party provided any record evidence to determine whether the toe plate can or cannot actually "slide" under a load. Therefore, we have determined that the Cart falls within the definition of the scope of the Order because all four scope characteristics are present.

Final Scope Ruling, Def.'s App. Tab 3, at 7 (footnotes omitted). Despite being given information as to the operation instructions of the garden cart and its dimensions and composition, Commerce incorrectly claimed that neither party provided any evidence as to whether the garden cart slides under a load to lift or move it, and proceeded to find that all of the characteristics of a hand truck were present.[8] Id.

Contrary to Commerce's assertions here, Vertex did offer evidence regarding whether its garden cart slides under a load to lift or move it, and that evidence indicates that Vertex's garden cart cannot do so. First, evidence shows that the garden cart was not designed to, and cannot, slide under a load. In order to slide under a load, a hand truck must be pushed towards a load before the toe plate can slide underneath it. Here, the operation instructions from Vertex warn: "DO NOT PUSH. This product is designed to be PULLED ONLY. Pushing may damage the product **and even cause bodily injury**." Request for Scope Ruling, Def.'s App. Tab 1, at 2 (emphasis original). This warning indicates that the manufacturer of the subject cart intended for objects to be placed on the stabilizing plate by hand and did not design the plate to

---

[8]In the normal course Commerce has the authority to request further information if the uncontradicted evidence of record does not satisfy its concerns. The court also notes that Commerce did not find Vertex's evidence uncredited. It simply ignored it.

slide under a load. Additionally, unlike the projecting edge of a hand truck, which is beveled to facilitate its sliding under a load, the edge of the stabilizing plate is a round steel wire that is not conducive to sliding under a load.[9] Thus, the evidence on the record demonstrates that the garden cart was not designed to, and cannot, slide under a load.

Second, the garden cart does not lift or move a load like a hand truck.[10] Unlike the garden cart, a hand truck is designed to carry heavy loads. Although the Order does not specify a specific load capacity for hand trucks, the fact that hand trucks need to slide under a load before it can be lifted or moved indicates that hand trucks are designed to carry heavy loads.[11] Here, unlike a hand truck which typically has a solid metal toe plate that can carry heavy loads, the garden cart has a metal wire stabilizing plate that cannot carry heavy loads. In fact, Vertex specifically stated that its garden cart cannot carry a load over 150 pounds. Request for Scope Ruling, Def.'s App. Tab 1, at 2. Moreover, the fact that the garden cart's wheels may shatter if a heavy load was placed on the cart further suggests that the cart was not designed like a hand truck to carry heavy loads. Request for Scope Ruling, Def.'s App. Tab 1, at 6. Additional

---

[9]The garden cart also has a metal, wire frame that projects out from the top rack of the subject cart and is parallel to the stabilizing plate. This wire frame prevents the cart from sliding under, and carrying, a taller load which would bump against the wire frame.

[10]In its brief, while the government argues that the garden cart's stabilizing plate can slide under a load, it does not address whether the subject cart can lift or move a load. The "lifting and/or moving" requirement is essential to the Order because it explains why a projecting edge has to slide under a load and it further explains how a hand truck operates.

[11]Commerce's Final Scope Ruling refers to the petition which describes a hand truck's load capacity as "generally not exceeding 1000 pounds." Id., Def.'s App. Tab 3, at 7. Although this description was not found in the Order, it is indicative of the weight that hand trucks are meant to carry.

evidence indicates that Vertex's garden cart may not be able to lift or move any load at all. The garden cart does not have a central frame member against which a load can be balanced when it is lifted or moved. Request for Scope Ruling, Def.'s App. Tab 1, at 5–6. Even though a central frame member is not a specific requirement of the Order, the absence of an object against which a load can be balanced prevents the secure lifting or moving of a load. Thus, contrary to Commerce's assertions, the record does contain evidence regarding the garden cart's ability to slide under a load to lift or carry it, and the only relevant evidence in the record indicates that the garden cart does not meet this essential requirement of the Order.

While Commerce may define and clarify the scope of an antidumping duty order, it cannot "interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." Duferco, 296 F.3d at 1095 (quoting Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed. Cir. 2001)) (internal quotation marks omitted). Commerce "interprets" an order contrary to its terms if it finds a product within the scope of the order despite the fact that the product does not exhibit all of the requirements of the order. By finding that Vertex's garden cart is within the scope of the Order without evidence that the garden cart's stabilizing plate can slide under a load to lift or move it, Commerce has impermissibly broadened the scope of the Order to include products that have projecting edges or toe plates that do not slide under a load for carrying purposes.

### III. CONCLUSION

For the foregoing reasons, Commerce erred when it did not follow the unambiguous language of the Antidumping Duty Order which required that a product slide under a load to lift or move it. Upon remand Commerce shall issue a determination excluding Vertex's

garden carts from the Order.


/s/  Jane A. Restani

Jane A. Restani
CHIEF JUDGE

Dated:  New York, New York

This 19th day of January, 2006.